IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOEL LADSON<br>4117 Trabert Ct.<br>Dover, PA 17315 | : <br> : <br> : <br> : | CIVIL ACTION |
| Plaintiff, | : <br> : <br> : | No. _____ |
| v. | : <br> : | |
| ES3, LLC<br>4875 N Susquehanna Trail<br>York, PA 17406<br>    and<br>ES3 YORK, LLC<br>4875 N Susquehanna Trail<br>York, PA 17406 | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | **JURY TRIAL DEMANDED** |
| Defendants. | : <br> : | |

**CIVIL ACTION COMPLAINT**

Plaintiff, by and through his undersigned counsel, hereby avers as follows:

**INTRODUCTION**

1. This action has been initiated by Joel Ladson (*hereinafter* referred to as "Plaintiff," unless indicated otherwise) against ES3, LLC and ES3 York, LLC (*hereinafter* collectively referred to as "Defendants" unless indicated otherwise) for violations of the Family and Medical Leave Act ("FMLA" - 29 U.S.C. §§ 2601 *et seq.*) and Pennsylvania common law. As a direct consequence of Defendants' unlawful actions, Plaintiff seeks damages as set forth herein.

**JURISDICTION AND VENUE**

2. This Court, in accordance with 28 U.S.C. § 1331, has jurisdiction over Plaintiff's claims because this civil action arises under laws of the United States.

3. This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in <u>International Shoe Co. v. Washington</u>, 326 U.S. 310 (1945) and its progeny.

4. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district, and in addition, Defendants are deemed to reside where they are subject to personal jurisdiction, rendering Defendants residents of the Middle District of Pennsylvania.

## **PARTIES**

5. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6. Plaintiff is an adult individual, with an address as set forth in the caption.

7. Defendant ES3, LLC is a third party logistics provider with locations throughout the United States, including its "flagship facility" in York, Pennsylvania – where Plaintiff physically worked.

8. Defendant ES3 York, LLC is upon information and belief a subsidiary of Defendant ES3, LLC that operates and manages the location at which Plaintiff worked in York, Pennsylvania.

9. Upon information and belief, because of their interrelation of operations, common ownership or management, centralized control of labor relations, common financial controls, and other factors, Defendants are sufficiently interrelated and integrated in their activities, labor

relations, ownership and management that they may be treated as a single and/or joint employer for purposes of the instant action.

10. At all times relevant herein, Defendants acted by and through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## FACTUAL BACKGROUND

11. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

12. Plaintiff was hired by Defendants on or about January 29, 2018.

13. Plaintiff was employed as an "Incentive Selector" working Friday through Tuesday, 10-12 hour shifts.

14. At all times relevant herein, Plaintiff was directly and indirectly supervised by various individuals, including but not limited to D2S Supervisor, Scott Ware (hereinafter "Ware") and Shift Operations Manager, Brian Diggs (hereinafter "Diggs")

15. Throughout his employment with Defendants, Plaintiff performed his job well and did not experience any significant work-place issues until in or about early 2020 – discussed further *infra*.

### Plaintiff's Hand Injury

16. In or about late February of 2020, Plaintiff injured his hand while performing work for Defendants and reported the same to Defendants' management.

17. Following his injury, Plaintiff took approximately 2-3 days off until he could see a worker's compensation panel physician.

18. Following his visit with Defendants' worker's compensation panel physician on or about February 24, 2020, Plaintiff was sent back to work full-duty (without performing any x-ray of his hand) but told only to work as tolerated.

19. Plaintiff returned to work but the pain in his hand became too unbearable and he had to call out of work.

20. As a result, Plaintiff asked Defendants if he could see a different worker's compensation panel physician because he did not believe the first physician properly diagnosed his injury.

21. Plaintiff's request was granted and he saw another physician on or about March 2, 2020 who performed an x-ray on his hand and determined that he had a "displaced and malrotated proximal phalanx fracture of the small finger" in his right hand.

22. As a result of his aforesaid diagnosis, Plaintiff was scheduled for surgery on or about March 12, 2020.

23. From the moment that Plaintiff injured his hand at work, Defendants' management's attitude towards Plaintiff changed completely and he began being treated in a very hostile manner.

24. For example, but not intending to be an exhaustive list:

   i. Between March 2, 2020 and March 12, 2020 (the day Plaintiff was scheduled for surgery), Plaintiff was told by Defendants' management that he had to report to work (regardless of the fact that this hand was in a lot of pain) because Defendants had light duty work available for him;

   ii. Plaintiff was scheduled for surgery on or about March 12, 2020 (a Thursday) and was advised by his doctor to take the weekend to rest

4

following his surgery (if not longer). Defendants' management informed Plaintiff that they wanted him to come into work the very next day after his surgery, stating that they had light duty work for him. Plaintiff was unable to report to work for four days immediately following his surgery. However, Plaintiff was afraid he was going to lose his job and therefore reported to work on Tuesday, March 17, 2020, performing work with one hand;

iii. When Plaintiff would call out of work because the pain associated with his hand injury was unbearable (before and after his surgery), Defendants' management completely disregarded Plaintiff's physical pain, questioned why he was calling off, and would continuously tell Plaintiff that he should be reporting to work because they had light duty for him;

iv. Plaintiff was told that he was calling out "too much;" and

v. Plaintiff's was subjected to comments from various members of Defendants' management questioning whether Plaintiff was actually injured and/or the severity of his injury and also whether Plaintiff's absences during the relevant time frame were really associated with his hand injury.

25. Furthermore, despite knowing that Plaintiff was suffering from a serious health condition (his aforesaid hand condition) and was taking time off from work to care for and/or treat for said condition, Defendants did not properly inform Plaintiff of his individualized FMLA rights; thus, Defendants failed to follow proper notice, designation, and informational regulations of the FMLA.

following his surgery (if not longer). Defendants' management informed Plaintiff that they wanted him to come into work the very next day after his surgery, stating that they had light duty work for him. Plaintiff was unable to report to work for four days immediately following his surgery. However, Plaintiff was afraid he was going to lose his job and therefore reported to work on Tuesday, March 17, 2020, performing work with one hand;

iii. When Plaintiff would call out of work because the pain associated with his hand injury was unbearable (before and after his surgery), Defendants' management completely disregarded Plaintiff's physical pain, questioned why he was calling off, and would continuously tell Plaintiff that he should be reporting to work because they had light duty for him;

iv. Plaintiff was told that he was calling out "too much;" and

v. Plaintiff's was subjected to comments from various members of Defendants' management questioning whether Plaintiff was actually injured and/or the severity of his injury and also whether Plaintiff's absences during the relevant time frame were really associated with his hand injury.

25. Furthermore, despite knowing that Plaintiff was suffering from a serious health condition (his aforesaid hand condition) and was taking time off from work to care for and/or treat for said condition, Defendants did not properly inform Plaintiff of his individualized FMLA rights; thus, Defendants failed to follow proper notice, designation, and informational regulations of the FMLA.

26. As a result, Defendants' management assessed attendance points against Plaintiff and issued him progressive discipline for absences related to his aforesaid hand injury (before and after surgery).

27. Plaintiff remained on light duty for his aforesaid hand injury until in or about June of 2020, taking intermittent time off related to the same and being issued disciplined as a result thereof.

### Plaintiff's Warts On His Feet

28. Before his aforesaid surgery, Plaintiff began treating for warts on his feet, which he believed were also associated with the work he was performing for Defendants.

29. Plaintiff began treating for this condition in or about early February of 2020.[1]

30. The warts on Plaintiff's feet made it difficult for Plaintiff to walk 10-12 hours a day for several days at a time.

31. Therefore, following his aforesaid hand surgery and more so towards the end of his employment with Defendants, Plaintiff began taking more time off related to the warts on his feet.

32. Plaintiff would inform Defendants' management of the reason he was taking intermittent time off work and in response, Plaintiff was told that he needed to "stop calling out" and that he had already taken too much time off related to his hand.

33. Plaintiff also informed Defendants' management that he believed the warts on his feet were caused by his employment with Defendants and that he needed to seek medical treatment for the same; however, Defendants' management ignored Plaintiff and never had him file an incident report or offered him the ability to file a worker's compensation claim.

---

[1] Plaintiff continues to treat for this condition in the present day.

6

**Plaintiff's Termination from Defendants**

34. Plaintiff was never advised by Defendants' management of his FMLA rights or his ability to take intermittent protected medical leave for any of his health conditions (including his aforesaid warts). Instead, Defendants' management continued to assess points against Plaintiff for absences related to his serious health conditions and issue him progressive discipline until he was ultimately terminated on or about September 9, 2020.

35. The reason provided for Plaintiff's termination was attendance, following progressive disciplinary steps (discipline which again was associated with the time he took off for his serious health conditions – discussed *supra*).

36. Plaintiff believes and therefore avers that he was harassed, disciplined, and ultimately terminated from his employment with Defendants because of his worker's compensation claim/injury and/or in violation of the FMLA.

**Count I**
**Violations of the Family and Medical Leave Act ("FMLA")**
**(Retaliation & Interference)**
**-Against Both Defendants-**

37. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

38. Plaintiff was an eligible employee under the definitional terms of the FMLA, 29 U.S.C. § 2611(a)(i)(ii).

39. Plaintiff requested leave from Defendants, his employers, with whom he had been employed for at least twelve months pursuant to the requirements of 29 U.S.C.A § 2611(2)(i).

40. Plaintiff had at least 1,250 hours of service with Defendants during his last full year of employment prior to his requested for intermittent medical leave (for both his hand injury and wart condition).

41. Defendants are engaged in an industry affecting commerce and employs fifty (50) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the current or proceeding calendar year, pursuant to 29 U.S.C.A § 2611(4)(A)(i).

42. Plaintiff was entitled to receive leave pursuant to 29 U.S.C.A § 2612 (a)(1) for a total of twelve (12) work weeks of leave on a block or intermittent basis.

43. Defendants committed interference and retaliation violations of the FMLA by *inter alia*: (1) taking actions towards Plaintiff that would dissuade a reasonable person from exercising his rights under the FMLA, including but not limited to issuing Plaintiff discipline related to FMLA-qualifying absences and making negative comments associated with his intermittent medical leave; (2) counting FMLA-qualifying absences against Plaintiff in making the decision to issue him progressive discipline and ultimately terminate his employment; (3) considering Plaintiff's FMLA needs in making the decision to issue him progressive discipline and/or terminated his employment; (4) issuing Plaintiff progressive discipline and/or terminating his employment in retaliation for requesting and/or utilizing FMLA-qualifying leave; and/or (5) failing to properly inform Plaintiff of his individualized FMLA rights and thus, failing to follow proper notice, designation, and informational regulations of the FMLA.

44. These actions as aforesaid constitute violations of the FMLA.

### Count II
### Common-Law Wrongful Discharge
**(Public Policy Violation)**
**-Against Both Defendants-**

45. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

46. Upon information and belief, Plaintiff was terminated in substantial part for making a claim for worker's compensation benefits and/or seeking worker's compensation benefits and/or for his work-related injuries (as discussed *supra*).

47. It is against Pennsylvania's public policy for an employee to be terminated for making a worker's compensation claim and/or seeking worker's compensation benefits. These actions as aforesaid constitute wrongful termination in Pennsylvania. *See Shick v. Shirey,* 552 Pa. 590, 716 A.2d 1231 (1997); *Rothrock v. Rothrock Motor Sales, Inc.*, 584 Pa. 297, 883 A.2d 511, 516 (2005).

48. The mere temporal proximity and the animosity exhibited by Defendants' management between Plaintiff's claim for worker's compensation and his termination creates an inference that his termination was in retaliation for making such a claim.

49. These actions as aforesaid constitute wrongful termination in Pennsylvania.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority.

B. Plaintiff is to be awarded punitive and/or liquidated damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

C. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress / pain and suffering);

D. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: _____
Ari R. Karpf, Esq.
3331 Street Road
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated: July 30, 2021